In its offer appellant included the following notation in conjunction with the requirement for inclusion of that clause: "A request for waiver of the requirements to submit a small business subcontracting plan is presently pending with Carol O'Brien at the VA" (R4, tab 1 at 18 of 50). In its complaint, appellant states in paragraph 6 "On or about April 15, 2004, GIV again requested that DoD waive the requirement in the Solicitation that GIV submit a Small Business Subcontracting Plan as a condition of eligibility for being awarded the delivery contract for Fluvirin®." Appellant did not submit a Small Business Subcontracting Plan to DoD. In paragraphs 72 and 73 it references the request for waiver as notifying the government that subcontracting would be impracticable (¶ 72) and as identifying cross-country trucking as the only thing it might subcontract (¶ 73). The government's answer "admitted to the extent supported by the referenced request for waiver which is the best evidence of its contents, otherwise denied." (Compl., answer, ¶¶ 6, 72, 73) The request for waiver is not in the record. There is no evidence a waiver was granted. We find FAR 52.219-9, SMALL BUSINESS SUBCONTRACTING PLAN (JAN 2002) was not waived and that it was part of the contract.

7. On 21 April 2004 the government awarded appellant Contract No. SPO200-04-D-0003 for an indefinite quantity of injectable vaccine (R4, tab 8 at 1). On that date, it issued a Delivery Order (DO) ordering 226,846 vials of vaccine (CLIN 0001) at $64.60 per vial ($14,654,251.60) and 17,460 packages of syringes (CLIN 0003) at $86.00 per package ($1,501,560.00). CLIN 0001 was described as "NSN 6505-01-517-0341 INFLUENZA VIRUS VACCINE, TRIVALENT, SPLIT OR PURIFIED SURFACE ANTIGEN (PSA), USP, 0.5 ML DOSE, 10 DOSE VIAL FOR IMMUNIZING PERSONS FOUR YEARS OF AGE AND OLDER." CLIN 0003 was described as "NSN 6505-01-517-0347 INFLUENZA VIRUS VACCINE, TRIVALENT, SPLIT OR PURIFIED SURFACE ANTIGEN (PSA), 0.5 ML DOSE, SYRINGE UNIT, 10'S FOR IMMUNIZING PERSONS 4 YEARS OF AGE AND OLDER." Appellant was required to deliver 25% of the ordered quantity no later than 30 September 2004, 25% of the ordered quantity no later than 31 October 2004, and 50% of the ordered quantity no later than 30 November 2004. The vaccine was to be shipped to "destination," which is described in the contract as Defense Distribution Depot Susquehanna, Mechanicsburg, PA, although the government incorporated the right to request delivery anywhere in the continental United States "(as specified in Delivery Order)." A variation in quantity of plus 8 percent was permitted. (R4, tab 8 at 2; ex. G-1)

8. The contract identified the manufacturing, packaging and packing of the vaccine as to be by "Chiron Vaccines, Liverpool, England." Both the contract and the DO provided that orders placed after 15 May 2004 "(dependent upon product availability)" were to be delivered within one week of award of a delivery order. (R4, tab 8 at 3; ex. G-1 at 2)

The formula for the 2004-2005 season shall be as required in the solicitation.

Expiration date shall be 30 June 2005 or later.

Material shall be shipped under constant refrigeration: 2° - 8° C (35° - 46° F).

Unit: Vial (VI). One vial containing 10 doses, as specified, constitutes one unit.

(R4, tab 1 at 23 of 50)

4. In submitting its offer dated 13 February 2004, appellant checked the "OTHER" box on page 4, with the following comment: "May have to alter delivery schedule outlined in bid due to releases of vaccine" (R4, tab 1 at 1, 4). Modification No. 00003 to the solicitation, dated 24 March 2004 and executed by appellant on 29 March 2004, states: "Delivery: Dependent upon FDA release of vaccine, 50% of each awarded CLIN quantity shall be delivered during the month of September . . . . The remaining 50% of each awarded CLIN quantity shall be delivered during the month of Oct." Weekly delivery percentages were to be negotiated. Orders placed after 15 May 2004, dependent upon product availability, were to be delivered within a week of the delivery order's award date. (R4, tab 4 at 1, 2)

5. Appellant offered to meet the specification requirements with a vaccine manufactured by Chiron Vaccines, Speke, Liverpool, United Kingdom (Chiron) (R4, tab 1 at 15-16 of 50). Appellant included the following as part of its response to the solicitation: "Last year, GIV was contracted with the following governmental agencies for the distribution of Fluvirin" (R4, tab 1 at last page). The government admits the solicitation requested appellant "to deliver Fluvirin® injectable flu vaccine to DoD employees for the 2004-2005 flu season" (compl., answer, ¶ 4). Neither the current nor past years' Chiron subcontracts are in the record.

6. The solicitation required inclusion of FAR 52.219-9, SMALL BUSINESS SUBCONTRACTING PLAN (JAN 2002), which provides at (b): "*Definitions*: . . . *Subcontract* means any agreement (other than one involving an employer-employee relationship) entered into by a Federal Government prime Contractor or subcontractor calling for supplies or services required for performance of the contract or subcontract."

---

"USP" is an abbreviation for "U. S. Pharmacopeia." *See also Serono Laboratories, Inc. v. Shalala*, 158 F.3d 1313, 1322 (D.C. Cir. 1998).

9. The contract incorporated, by reference, FAR 52.212-4, CONTRACT TERMS AND CONDITIONS – COMMERCIAL ITEMS (OCT 2003) and FAR 52.246-2, INSPECTION OF SUPPLIES – FIXED PRICE (AUG 1996). FAR 52.212-4(f) and (m) provide:

> (f) Excusable delays. The Contractor shall be liable for default unless nonperformance is caused by an occurrence beyond the reasonable control of the Contractor and without its fault or negligence such as, acts of God or the public enemy, acts of the Government in either its sovereign or contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, unusually severe weather, and delays of common carriers. The Contractor shall notify the Contracting Officer in writing as soon as it is reasonably possible after the commencement of any excusable delay, setting forth the full particulars in connection therewith, shall remedy such occurrence with all reasonable dispatch, and shall promptly give written notice to the Contracting Officer of the cessation of such occurrence.

. . . .

> (m) Termination for cause. The Government may terminate this contract, or any part hereof, for cause in the event of any default by the Contractor, or if the Contractor fails to comply with any contract terms and conditions, or fails to provide the Government, upon request, with adequate assurances of future performance. In the event of termination for cause, the Government shall not be liable to the Contractor for any amount for supplies or services not accepted, and the Contractor shall be liable to the Government for any and all rights and remedies provided by law. If it is determined that the Government improperly terminated this contract for default, such termination shall be deemed a termination for convenience.

(R4, tab 1 at 9-10 of 50)

10. Prior to the delivery of any vaccine, appellant's supplier, Chiron, discovered bacterial contamination in certain lots of the vaccine it had produced for the 2004-2005 flu season. On or about 25 August 2004, Chiron notified the U.S. Food and Drug Administration (FDA) of the discovery and advised that it could not release any flu

vaccine for importation to the United States until both the British and United States authorities deemed the product safe and saleable. (Compl., answer, ¶ 10)

11. In September 2004, the Medicines and Healthcare Products Regulatory Agency (MHRA), the British equivalent of the FDA, conducted an inspection of Chiron's facility. On 5 October 2004, the MHRA suspended Chiron's license to operate for three months. (Compl., answer, ¶¶ 11, 12)

12. Due to the nonavailability of Chiron manufactured Fluvirin®, a vaccine shortage ensued. The only other manufacturer of injectable flu vaccine, Aventis, could not manufacture sufficient quantities of its vaccine, Fluzone®, in time for use during the 2004-2005 flu season. (Compl., answer, ¶ 16)

13. In response to the shortage, the Centers for Disease Control (CDC) developed a priority list and urged that entities in possession of the injectable vaccine Fluzone® make it available only to those persons on the list (compl., answer, ¶¶ 18, 19). On 28 October, the government placed an order for FluMist®. The government ultimately substituted FluMist®, thereby freeing up approximately 200,000 doses of injectable flu vaccine for those individuals who could not take FluMist®. CDC and the states coordinated distribution of flu vaccine. (Compl., answer, ¶ 20)

14. By letter dated 12 October 2004, appellant[2] informed the government as follows:

> This letter is to advise you that we have been informed by Chiron, our supplier of Fluvirin Influenza Vaccine, that it will not be able to supply any flu vaccine for the 2004-2005 flu season. As you have probably heard, the Medicines and Healthcare Products Regulatory Agency of the United Kingdom has temporarily suspended Chiron's license to manufacture Fluviron [sic] vaccine preventing the company from releasing any of the product for the 2004-2005 influenza season. As a consequence, we will be unable to fill any orders for Fluviron [sic] vaccine for the current flu season.
>
> We deeply regret these unfortunate developments and we are doing everything possible to identify potential alternative sources of flu vaccine. However, because of the late timing of this unexpected development, we are not

[2] The letter was on Henry Schein, Inc., letterhead. The parties treat it as from GIV, which is apparently a subsidiary (gov't mot., ¶ 8; app. mot., ¶ 12; R4, tab 14 at 1).

> optimistic that we will be able to identify alternative sources of supply that could meet all or any option of your order.

(R4, tab 13) Appellant never obtained any alternative injectable vaccine. Appellant failed to deliver any vaccine under the contract. (Gov't mot. at 4, ¶¶ 9, 10; app. resp. at 7, ¶ 12)

15. Based upon the FDA's own inspection of the Chiron facility, on 15 October 2004, the FDA banned all shipments of Fluvirin® to the United States. The FDA also determined that none of the Fluvirin® already in the United States could be used in this country because of safety concerns. (Compl., answer, ¶¶ 13, 14)

16. On 15 November 2004, the government issued a "DETERMINATION AND FINDINGS," "NOTICE OF TERMINATION FOR CAUSE," and modifications terminating the contract for cause stating that appellant "failed to make timely delivery under this contract, and that such failure was not due to excusable causes" (R4, tabs 14, 15 at 1, tab 16). The "DETERMINATION AND FINDINGS" indicated the government's intent "to assert its right to acquire similar items in another contracting action and to charge [appellant] with any excess reprocurement costs together with any incidental or consequential damages incurred because of the termination" (R4, tab 14 at 2, ¶ 8). The "DETERMINATION AND FINDINGS" further stated "[a]s the contractor notified the contracting officer of its intent to not perform, the contracting officer will not send a cure notice or show cause letter to the contractor" (R4, tab 14 at 3). The termination notice, *inter alia*, informed appellant of its appeal rights (R4, tab 15). A timely notice of appeal was filed and received by the Board on 10 February 2005 (Bd. corr. file). There is no evidence of a contracting officer's decision or other demand for reprocurement costs.

## DECISION

### Summary Judgment Principles

Summary judgment is appropriate where no material facts are genuinely in dispute and the moving party is entitled to judgment as a matter of law. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). A material fact is one that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Inferences must be drawn in favor of the party opposing summary judgment. *Hughes Aircraft Co.*, ASBCA No. 30144, 90-2 BCA ¶ 22,847. In deciding a motion for summary judgment, we are not to resolve factual disputes, but to ascertain whether material disputes of fact are present. *General Dynamics Corp.*, ASBCA Nos. 32660, 32661, 89-2 BCA ¶ 21,851. This principle also applies in the case of cross-motions for summary judgment. *Town of Port Deposit v. United States*, 21 Cl. Ct. 204, 208 (1990).

However, on cross-motions "counsel are deemed to represent that all relevant facts are before the [Board] and a trial is unnecessary." *Aydin Corp. v. United States*, 669 F.2d 681, 689 (Ct. Cl. 1982).

More than mere assertions of counsel are necessary to counter a motion for summary judgment. *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626-27 (Fed. Cir. 1984). The nonmovant may not rest on its conclusory pleadings, but must set out, in affidavit or otherwise, what specific evidence could be offered at trial. Failing to do so may result in the motion being granted. Mere conclusory assertions do not raise a genuine issue of fact. *Id.* The party with the burden of proof must support its position with "more than a scintilla of evidence." *Walker v. American Motorists Insurance Co.*, 529 F.2d 1163, 1165 (5th Cir. 1976).

Evidence sufficient to establish the existence of a genuine material factual issue need not be admissible at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 324 (1986). Even so, a hearsay affidavit is not a substitute for the personal knowledge of a party. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2nd Cir. 1988). Indeed, FED. R. CIV. P. 56(e) requires affidavits to be "made on personal knowledge [and] set forth such facts as would be admissible in evidence." Thus, statements inadmissible under FED. R. EVID. 408 were inadequate to defeat a motion for summary judgment. *Scott Aviation*, ASBCA No. 40776, 91-3 BCA ¶ 24,123. Moreover, while summary judgment need not be denied merely to satisfy the speculative hope that discovery will result in the uncovering of evidence to support a complaint, *Pure Gold, supra*, 739 F.2d at 627, an adequate opportunity for discovery must usually precede summary judgment. *Burnside-Ott Aviation Training Center, Inc. v. United States*, 985 F.2d 1574 (Fed. Cir. 1993). Finally, summary judgment may be denied if "there is reason to believe that the better course would be to proceed to a full trial." *Anderson, supra*, 477 U.S. at 255.

<u>Appellant's Opposition and Cross-Motion</u>

It is undisputed that appellant did not deliver flu vaccine. This leads us to conclude that, unless appellant can establish government fault or some other excuse for its failure to deliver, it is in default. *Consolidated Industries, Inc. v. United States*, 195 F.3d 1341, 1343-44 (Fed. Cir. 1999). Indeed, both FAR 52.212-4, CONTRACT TERMS AND CONDITIONS – COMMERCIAL ITEMS and FAR 52.246-2, INSPECTION OF SUPPLIES – FIXED PRICE (finding 9) provide for termination in the event of failure to deliver conforming supplies. However, appellant takes the position that: "(1) there was no default because the conditions precedent to [appellant's] obligation to perform under the delivery contract at issue . . . had not been met . . . ; (2) there was no default because [appellant's] duty to deliver was excused by operation of law, i.e., FDA refusal to permit the release of Fluvirin® into the United States, FDA embargo of Fluvirin® from Great Britain, the acts of the CDC . . . to control the distribution of Fluvirin® only to individuals on a

government approved priority list . . . ; (3) Chiron was not a subcontractor of [appellant], and [appellant] had no liability under the contract for Chiron's inability to ship flu vaccine . . . ; and (4) [appellant] is not liable for excess reprocurement costs . . . ." (App. mot. at 2 of 22) We address each argument below.

(1) Appellant asserts it did not default under the terms of the contract because "numerous clauses and provisions . . . not only modify the [s]olicitation's proposed schedule, but expressly condition [appellant's] obligation to deliver injectable flu vaccine on a number of conditions precedent" (app. mot. at 10 of 22). For example, the solicitation response sheet contains the clause "[m]ay have to alter delivery schedule outlined in bid due to releases of vaccine" (R4, tab 1 at 4). Modification No. 00003 states "Delivery: Dependent upon FDA release of vaccine" (R4 tab 4 at 2). Specifically appellant maintains it had no obligation to deliver the flu vaccine "*until and unless* Chiron and the FDA released the vaccine for import to and sale in the United States" (app. mot. at 11 of 22). Appellant goes on to characterize the 12 October 2004 letter in which appellant informed the government that Chiron would not be able to supply any vaccine for the 2004-2005 flu season as "notification to the [g]overnment that a condition precedent to [appellant's] performance -- the release of Fluvirin® -- had not occurred" (*id.*). However, the Board is not persuaded by appellant's argument that it is off the hook because the contract "included these conditions precedent, and that [appellant] had expressly conditioned its obligation to deliver Fluvirin® on the availability of the flu vaccine, and the release of the vaccine by both the manufacturer of the product and the FDA" (app. mot. at 4 of 22).

In *District of Columbia v. Camden Iron Works,* 181 U.S. 453, 461-62 (1901), the Court set forth the "general principle of law" that a party may not use the non-performance of a condition precedent when that party, (here, appellant) is responsible for the non-performance of the condition. *See also Northern Heel Corp. v. Compo Industries, Inc.*, 851 F.2d 456, 461-62 (1st Cir. 1988). It is not disputed that Chiron had produced contaminated vaccine and that it was this condition that prevented FDA approval of the Fluvirin® (findings 9-14). Chiron, and thus appellant, was therefore responsible for the lack of FDA approval that caused appellant's inability to deliver and led inexorably to the termination for cause. Appellant's argument is without merit.

(2) Appellant's second argument is a variation on the first. It seeks to be excused for non-performance because the FDA, a government agency, refused to approve Fluvirin® even though it was appellant's supplier Chiron that had created the situation. The contract required appellant to deliver a product that complied with U.S.

Pharmacopeia, which has been referred to as "the 'bible' of the pharmaceutical industry," *United States v. Bhutani,* 175 F.3d 572, 575 (7th Cir. 1999), and that had to be approved by the FDA. Instead, it produced a vaccine that was contaminated (finding 10). It cannot profit from its own or its supplier's failure to produce a safe, deliverable – indeed, *approvable* – vaccine. *District of Columbia, supra,* 181 U.S. at 461-62; *Northern Heel Corp., supra,* 851 F.2d at 461-62; *Lowenschuss v. Kane,* 520 F.2d 255, 265 (2d Cir. 1975) (impossibility caused by judicial order is no excuse if the fault of the party owing performance contributed to the order); *Six Companies of California v. Joint Highway District No. 13 of California,* 110 F.2d 620, 623, (9th Cir. 1940), *rev'd on other grounds,* 311 U.S. 180 (1940) (work stoppage pursuant to state law did not excuse delay where there were cave-ins due to contractor's incompetence); *Sig Trans, Inc.*, ASBCA No. 10557, 66-1 BCA ¶ 5422 (seizure of a subcontractor's plant for failure to pay a tax lien was enforcement of the tax lien and not the sort of sovereign act that provided an excuse for non-performance.) *See also* RESTATEMENT (SECOND) OF CONTRACTS, § 264, Prevention by Governmental Regulation or Order, cmt. b ("a party who seeks to justify his non-performance under this Section must have observed the duty of good faith and fair dealing imposed by § 205 in attempting, where appropriate, to avoid its application.") Appellant cannot be excused for non-performance and avoid application of the termination for cause provision by relying on the government's failure to approve the vaccine when it was Chiron's failure to produce an *approvable* vaccine which caused the MHRA and FDA to withhold approval. In this regard, there is no dispute that Chiron itself informed FDA it could not deliver vaccine until FDA and MHRA deemed it safe (finding 10).

Appellant also argues that the burden of proof is on the government to prove that its failure to deliver acceptable vaccine was due to Chiron's negligence or "misdeeds" (app. mot. at 15 of 22). We disagree. Once the fact of non-delivery is established, the burden is on the appellant to show that its failure to perform was beyond its control and without its fault or negligence. *DCX, Inc. v. Perry,* 79 F.3d 132, 134 (Fed. Cir. 1996), *cert. denied,* 519 U.S. 992 (1996); *Double B Enterprises, Inc.,* ASBCA Nos. 52010, 52192, 01-1 BCA ¶ 31,396 at 155,110. The fact of non-delivery is not in dispute, so appellant must prove that its failure to deliver was excusable. It has not filed affidavits or exhibits, notwithstanding the plain language of FED. R. CIV. P. 56, which mandates entry of summary judgment against a party who fails to make a showing essential to its case and for which it bears the burden of proof at trial. *Celotex, supra,* 477 U.S. at 322-23. Appellant's "excusability" arguments are the "conditions precedent" and "operation of law" arguments dealt with above, which we have found unavailing.

(3) The United States Supreme Court long ago observed that in a government contract which excused "unavoidable" delays, "[it] would seem that the very essence of the promise of a contract to deliver articles is ability to *procure* or make them." *Carnegie Steel Co. v. United States,* 240 U.S. 156, 164 (1916) (emphasis supplied). Thus, it is contemplated in such contracts that procuring, or in the present sense, furnishing, goods not manufactured by the prime contractor is of "the very essence of the . . . contract."[3] In short, procured, or subcontracted items, are therefore of "the very essence" of a government contract and failure to deliver them must be for a reason enumerated in the contract if it is to be treated as excusable (*see* finding 9). We have generally held a contractor responsible for the actions of its subcontractors and suppliers. *E.g., D & H Construction Co.,* ASBCA No. 37482, 89-3 BCA ¶ 22,070 at 111,005; *Datametrics, Inc.,* ASBCA No. 16086, 74-2 BCA ¶ 10,742 at 51,102-03. Chiron indisputably was the manufacturer of the vaccine and the party from which appellant was to obtain the vaccine (findings 5, 8, 14). Under the doctrine set forth in *Carnegie Steel* and other cases, Chiron's performance was essential to the enterprise and its failures were appellant's failures, and its role as the supplier of the vaccine to appellant made it appellant's subcontractor by any rational definition of that term. However, appellant asserts that Chiron was not its subcontractor, a term which we assume appellant means to be inclusive of "supplier," and that appellant therefore had no liability under the contract for Chiron's inability to "ship flu vaccine" (app. mot. at 2 of 22). It bases its argument on a request for a waiver of the requirement to submit a small business contracting plan that "was pending with the Veterans Administration contracting officer," and its assertion that it did not submit a small business contracting plan to DoD (app. reply at 7-8 of 10). The record does not contain a request for waiver from either the Department of Veterans Affairs or DoD, and there is no evidence of DoD's granting of the waiver (finding 6).[4] In fact, appellant doesn't even argue that it received a waiver. It is not our duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Anderson, supra,* 477 U.S. at 249-50. This is particularly so in the case of cross-motions. *Aydin Corp.*, 669 F.2d at 689. As the party with the burden of proof defending against the government's motion, appellant must establish there is a material issue as to whether Chiron is a subcontractor. In this regard, we have said that the party with the burden of proof "is obligated to do something to at least place in issue the facts essential to its case." *Sermor, Inc.*, ASBCA Nos. 46754 *et al.,* 94-3 BCA ¶ 27,273 at 135,879. In its cross-motion as the *movant* with the burden of proof, appellant is required to establish Chiron's role as something other than a subcontractor or supplier sufficiently that no

---

[3] Indeed, appellant characterizes its part of the bargain as "acquiring and delivering the vaccine" (app. 19 October 2006 response at 4), while raising arguments we have rejected as excuses for non-delivery.

[4] Appellant quotes extensively from a communication addressing a waiver of a subcontracting plan (app. Reply at 8 of 10). Without the document itself we are unable to ascribe evidentiary value to the quotation.

reasonable trier of fact could find other than for the movant. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986), *citing* W. Schwarzer, *Summary Judgment Under The Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984). In both defending against the government's motion and cross-moving for summary judgment, appellant relies on the pleadings as, in effect, government admissions (app. reply at 7 of 10). However, we read the government's answer as denying the propositions appellant has set forth in its complaint regarding whether Chiron is a subcontractor or supplier, except to the extent the content of the waiver request itself verifies appellant's assertions. Without the waiver request (or requests) we cannot determine whether appellant has an evidentiary basis to establish there is an issue as to Chiron's role, let alone to establish that Chiron was not its subcontractor, and appellant may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact." *Anderson, supra*, 477 U.S. at 257. Accordingly, we have found that the Small Business Subcontracting Plan clause was not waived and was a part of the contract. (Finding 6) Under the definition of "subcontract" in that clause (*id.*), Chiron was a subcontractor.

Even if the "subcontracting" clause were not in the contract we would be persuaded that Chiron was appellant's subcontractor/supplier. The definition of "subcontractor" at FAR 44.101 is "any supplier, distributor, vendor, or firm that furnishes supplies or services to or for a prime contractor or another subcontractor." Chiron seems to fit squarely into that definition. Further, it is undisputed that appellant is a wholesale distributor of pharmaceuticals (finding 2). The definition of "wholesale" is "of, relating to, or engaged in the sale of goods or commodities in quantity for resale." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, *s.v.* "wholesale." Because appellant is engaged in marketing pharmaceuticals, it is subject to the regulations of the Food and Drug Administration. Relevant regulations include the following definitions under PRESCRIPTION DRUG MARKETING at 21 C.F.R § 203.3(h) and (dd):

> (h) Distribute means to sell, offer to sell, deliver, or offer to deliver a drug to a recipient, except that the term "distribute" does not include:
>
> (1) Delivering or offering to deliver a drug by a common carrier in the usual course of business as a common carrier; or
>
> (2) Providing of a drug sample to a patient by:
>
> (i) A practitioner licensed to prescribe such drug;

. . . .

(dd) Wholesale distributor means any person engaged in wholesale distribution of prescription drugs, including, but not limited to, manufacturers; repackers; own-label distributors; private-label distributors; jobbers; brokers; warehouses, including manufacturers' and distributors' warehouses, chain drug warehouses, and wholesale drug warehouses; independent wholesale drug traders; and retail pharmacies that conduct wholesale distributions.

This record establishes that the contract at issue provided that the government was to pay for the vaccine, so under the above definitions, appellant as a wholesale distributor was engaged in the *sale* of Fluvirin®. This interpretation is supported by the FDA definition of "distribute," which further establishes that the singular act of delivering in the fashion of a common carrier does not constitute distribution. Moreover, the contract required appellant to "furnish,"[5] or supply, the vaccine to the government (finding 1). Appellant was not, however, the manufacturer (finding 5). As appellant was to supply the vaccine for payment of money and it was not the manufacturer, the vaccine had to be furnished by some other entity. That entity was Chiron (*id.*). Chiron thus "furnish[ed] supplies . . . to . . . a prime contractor," thereby meeting the FAR 44.101 definition of subcontractor. There is nothing in the FDA regulations and definitions that changes our opinion that Chiron was appellant's subcontractor as that term is defined in the FAR. Indeed, appellant described Chiron as its "supplier" in the 12 October 2004 letter informing the government of its inability to deliver vaccine (finding 14). We find that Chiron was appellant's subcontractor and reject appellant's argument to the contrary.

Finally, although not addressed by the parties, we are aware of *Schweigert, Inc. v. United States,* 388 F.2d 697, 700-01 (Ct. Cl. 1967), and the holding therein that, absent a specific provision addressing second-tier and below subcontractors, a prime contractor is not responsible for culpable actions of subcontractors with which it is not in direct privity. The termination for cause provision here makes no mention of subcontractors other than common carriers and thus, unlike the clause in *Schweigert,* does not excuse nonperformance based on unforeseeable causes affecting subcontractors. In any event, the contract with Chiron is not in the record, so we do not know whether Chiron was a first tier subcontractor. We need not analyze the applicability of that case to this situation, however, because appellant has the burden of proving that its nonperformance was excusable. As it has failed to put the Chiron contract in the record, we cannot

---

[5] "Furnish" is defined as "to provide or supply." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, *s.v.* "furnish."

conclude there is a material issue as to privity between Chiron and appellant. Therefore, even if we were to decide that *Schweigert* was controlling here (and we do not so hold), appellant has failed to establish the factual predicate to its applicability. Accordingly, we find that appellant must be held responsible for Chiron's fault and its resultant inability to furnish the required vaccine. *D & H Construction Co.*, 89-3 BCA at 111,005; *Datametrics, Inc.*, 74-2 BCA at 51,102-03.

(4) Appellant finally argues that it is entitled to summary judgment on the issue of reprocurement costs. The government replies that it has not issued a demand for reprocurement costs and that the motion is therefore premature. There is no evidence of a contracting officer's decision or other demand for reprocurement costs (finding 16). We do not, therefore, have jurisdiction over the issue. *Mindeco Corp.*, ASBCA No. 45207, 94-1 BCA ¶ 26,410.

Appellant's cross-motion is denied.

<u>The Government's Motion</u>

The government argues that appellant's failure to deliver the vaccine was a default under the contract and that the default was not excusable. We have dealt at length with and rejected most of appellant's counter arguments in addressing its cross-motion. We find merit in the government's motion.

The government has the burden of proving that the termination for default was justified. *Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 763-65 (Fed. Cir. 1987). Generally, it is enough for the government to show that the contactor's supplier failed to deliver necessary material. *H .C. Machine Co.*, ASBCA No. 32932, 89-1 BCA ¶ 21,247. We think the principles that apply under the FAR clauses that govern termination for default apply with equal force under the termination for cause provision in this "Commercial Items" contract. The clause in question gave the government the right to terminate for cause in the event the contractor failed to comply with the contract's terms. (Finding 9) There is no dispute as to the basic facts. Appellant is a wholesale distributor that used Chiron, a British firm, as its supplier under the contract. Chiron is a manufacturer of flu vaccine. (Findings 2, 5, 14) Appellant contracted with the government to deliver flu vaccine that met the contract specifications according to a schedule under which all deliveries were to be completed by 30 November 2004 (findings 3, 7). That schedule was not met (findings 10-15). The underlying reason for the failure to deliver pursuant to the contract schedule was that certain lots of vaccine manufactured by Chiron were contaminated by bacteria (finding 10). As a result, on 5 October 2004 the

British health agency MHRA suspended Chiron's license for three months and the FDA banned all shipments of the vaccine (findings 11, 15). Appellant could not, therefore, meet the contract schedule with Fluvirin®. Appellant thereafter informed the government in a 12 October 2004 letter that it would "be unable to fill any orders for Fluviron [sic] vaccine for the current flu season" and that it was unlikely that a substitute vaccine would be found. Appellant did not deliver either Fluvirin® or a substitute vaccine. (Finding 14) The government terminated the contract for cause on 15 November 2004 (finding 16). On the face of things, then, appellant was in default. We conclude that the government has met its *prima facie* burden of proving that it was justified in terminating the contract for cause.

We do not address issues as to whether FluMist® was an acceptable substitute, the propriety of government reprocurement actions, etc. We consider such issues to be properly raised in a future reprocurement appeal (if any). We have held above that we lack jurisdiction over reprocurement issues. *Mindeco Corp., supra.,* and we have earlier rejected the "excusability" arguments appellant has raised. Accordingly, we sustain the government's motion and deny the appeal.

SUMMARY

Appellant's cross-motion is denied. The government's motion is granted. The appeal is denied.

Dated: 31 August 2006

CARROLL C. DICUS, JR.
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures Continued)

I concur

MARK N. STEMPLER
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I concur

PAUL WILLIAMS
Administrative Judge
Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 54930, Appeal of General Injectables & Vaccines, Inc., rendered in conformance with the Board's Charter.

Dated: AUG 3 1 2006

CATHERINE A. STANTON
Recorder, Armed Services
Board of Contract Appeals

ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of -- | ) | |
| | ) | |
| General Injectables & Vaccines, Inc. | ) | ASBCA No. 54930 |
| | ) | |
| Under Contract No. SPO200-04-D-0003 | ) | |

APPEARANCES FOR THE APPELLANT: Joseph E. Casson, Esq.
Susan A. Turner, Esq.
Proskauer Rose LLP
Washington, DC

APPEARANCE FOR THE GOVERNMENT: Kathleen D. Hallam, Esq.
Chief Trial Attorney
Defense Supply Center (DLA)
Philadelphia, PA

OPINION BY ADMINISTRATIVE JUDGE DICUS
ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

This appeal is taken from a contracting officer's decision terminating the contract for cause. The underlying contract is for flu virus vaccine. The government has filed a summary judgment motion asserting there are no material facts in dispute and that it is entitled to judgment as a matter of law. Appellant has cross-moved for summary judgment. We deny appellant's motion and grant the government's motion.

FINDINGS OF FACT FOR PURPOSES OF THE MOTION

1. On or about 14 January 2004 the Defense Supply Center Philadelphia issued Solicitation No. SPO200-04-R-0005. The solicitation included FAR 52.216-22, INDEFINITE QUANTITY (OCT 1995), paragraph (b), which provides:

> (b) Delivery or performance shall be made only as authorized by orders issued in accordance with the Ordering clause. The Contractor shall furnish to the Government, when and if ordered, the supplies or services specified in the Schedule up to and including the quantity designated in the Schedule as the "maximum." The Government shall order at least the quantity of supplies or services designated in the Schedule as the "minimum."

(R4, tab 1 at 1, 11)

2. The solicitation employed Standard Form 1449, Solicitation/Contract/Order for Commercial Items. It requested offers for influenza virus vaccine. Annual requirements, as amended, were estimated at 3,769,900 doses. As amended, for Contract Line Item No. (CLIN) 0001, annual estimated quantity was 3,240,660 doses, or 324,066 vials; for CLIN 0002, 35,464 vials; and, for CLIN 0003, 17,460 packages. General Injectables & Vaccines, Inc. (GIV or appellant), "a licensed wholesale distributor of pharmaceuticals and supplies, including Fluvirin® flu vaccine," bid $64.60 per vial. The amended guaranteed minimums for CLINs 0001, 0002, and 0003 were, respectively, 30 percent of the annual estimated quantity, 100 percent of the annual estimated quantity, and 100 percent of the annual estimated quantity. The amended maximums for CLINs 0001, 0002, and 0003 were, respectively, 405,083 vials, 44,330 vials, and 21,825 packages. (R4, tab 1 at 3, 6, 7, tab 4; compl., answer, ¶ 1)

3. The specification sheet for CLIN 0001 provided as follows:

> NSN: 6505-01-503-4958 (TO BE REVISED WITH 2004/2005 NSN) CLIN 0001
>
> ITEM IDENTIFICATION: INFLUENZA VIRUS VACCINE, USP, TRIVALENT, SPLIT OR PURIFIED SURFACE ANTIGEN, 0.5 ML DOSE, 10 DOSE, 1's
>
> SALIENT CHARACTERISTICS
>
> Shall be Influenza Virus Vaccine, USP.
>
> Shall be a Trivalent, Split or Purified Surface Antigen Vaccine for intramuscular administration, for immunizing persons 6 months of age or older OR 4 years of age or older.
>
> Shall be suitable for subcutaneous or intramuscular administration.
>
> Shall be in accordance with the requirements of the USP.[1]

---

[1] The government asserts, and appellant does not challenge, that the contract required appellant to conform to the standards of "U. S. Pharmacopeia" (gov't mot. at 10). From appellant's failure to take exception and the context of "USP, we find that