**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| GENERAL INJECTABLES & VACCINES, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 07-156C<br>(Judge Coster Williams) |
| UNITED STATES, | ) | |
| Defendant | ) | |

**<u>DEFENDANT'S ANSWER AND COUNTERCLAIM</u>**

For its answer to the complaint, defendant, the United States, admits, denies, and alleges as follows:

The allegation contained in the first sentence of the first unnumbered paragraph constitutes a conclusion of law and plaintiff's characterization of its case to which no response is required; to the extent it may be deemed an allegation of fact, it is denied. Admits the allegation contained in the second sentence of the first unnumbered paragraph.

The allegation contained in the first sentence of the second unnumbered paragraph constitutes a conclusion of law and plaintiff's characterization of its case to which no response is required; to the extent it may be deemed an allegation of fact, it is denied. Admits the allegation in the second sentence of the second unnumbered paragraph.

The allegation contained in the first sentence of the third unnumbered paragraph constitutes a conclusion of law and plaintiff's characterization of its case to which no response is required; to the extent it may be deemed an allegation of fact, it is denied. The second sentence contained in the third unnumbered paragraph is a conclusion of law to which no response is required; to the extent it may be deemed an allegation of fact, it is denied.

**Parties**

1. Admits the allegation contained in the first sentence of paragraph 1 that Plaintiff GIV maintains its principal place of business in the Commonwealth of Virginia; denies the remainder of the allegations contained in the first sentence of paragraph 1 for lack of knowledge or information sufficient to form a belief as to their truth. Admits the allegation contained in the second sentence of paragraph 2 that plaintiff is a wholesale distributor of pharmaceuticals and medical supplies, including Chiron's Fluvirin vaccine, which Chiron manufactured in its Liverpool, England facility; denies the remaining allegations contained in the second sentence of paragraph 2 for lack of knowledge or information sufficient to form a belief as to their truth.

2. Admits.

**Jurisdiction**

3. The allegation contained in paragraph 3 constitutes a conclusion of law to which no response is required; to the extent it may be deemed an allegation of fact, it is denied.

**Factual Background**

4. Admits the allegation contained in paragraph 4 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegation contained in paragraph 4.

5. Admits the allegations contained in paragraph 5 to the extent supported by the "response" cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 5.

6. Denies the allegations contained in paragraph 6 for lack of knowledge sufficient to form a belief as to their truth.

7. Admits the allegation contained in paragraph 7 to the extent supported by the contract cited, which is the best evidence of its contents; otherwise denies the allegation contained in paragraph 7.

8. Admits the allegations contained in the first sentence in paragraph 8 to the extent supported by the "delivery order" cited, which is the best evidence of its contents; otherwise denies the allegations contained in the first sentence of paragraph 8. The allegation contained in the second sentence of paragraph 8 constitutes a conclusion of law to which no response is required; to the extent it may be deemed an allegation of fact, it is denied.

9. Admits the allegation contained in the first sentence of paragraph 9. The second sentence contained in paragraph 9 constitutes a conclusion of law to which no response is required; to the extent it may be deemed an allegation of fact, it is denied.

10. Admits the allegation contained in the first sentence of paragraph 10. Denies the allegations contained in the second sentence of paragraph 10 for lack of knowledge or information sufficient to form a belief as to their truth.

11. Admits the allegations contained in the first sentence of paragraph 11. Denies the allegations contained in the second sentence of paragraph 11 for lack of knowledge or information sufficient to form a belief as to their truth.

12. Admits the allegations contained in the first and second sentences of paragraph 12. Admits the allegations contained in the third sentence of paragraph 12 that FluMist is not an injectable vaccine and that FluMist is inhaled through the nose; the remainder of the allegations contained in the third sentence of paragraph 12 constitute conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied. The

allegation contained in the fourth sentence of paragraph 12 constitutes a conclusion of law to which no response is required; to the extent it may be deemed an allegation of fact, it is denied. Admits the allegations contained in the fifth sentence of paragraph 12. Admits the allegation contained in the sixth sentence of paragraph 12 that FluMist is more expensive than Fluvirin; denies the remaining allegations contained in the sixth sentence of paragraph 12 for lack of knowledge or information sufficient to form a belief as to their truth.

13. To the extent that plaintiff may be relying on Delivery Order No. SP0200-05-F-AA01 as a basis for the allegations contained in paragraph 13 that "[w]hen DPSCP purchased the FluMist from GIV on October 7, 2004, it did not claim that GIV had 'defaulted' under the Contract, did not tell GIV that it was purchasing the FluMist as a substitute, and certainly did not say that it might later be claiming the excess purchase price as a reprocurement cost under the Contract, admits the allegations contained in paragraph 13 to the extent supported by Delivery Order No. SP0200-05-F-AA01, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 13 for lack of knowledge or information sufficient to form a belief as to their truth.

14. Admits the allegations contained in paragraph 14 to the extent supported by the letter cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 14.

15. Admits the allegations contained in the first and second sentences of paragraph 15. The allegation contained in the third sentence of paragraph 15 constitutes a conclusion of law to which no response is required; to the extent it may be deemed an allegation of fact, it is denied. Admits the allegations contained in the fourth sentence of paragraph 15.

16. Denies the allegations contained in the first sentence of paragraph 16. Admits the allegations contained in the second sentence of paragraph 16. Admits the allegations contained in the third sentence of paragraph 16 to the extent supported by the "re-allocation plan" cited, which is the best evidence of its contents; otherwise denies the allegations contained in the third sentence of paragraph 16. The fourth sentence contained in paragraph 16 constitutes a conclusion of law and plaintiff's characterization of its case to which no response is required; to the extent that it may be deemed an allegation of fact, it is denied. Admits the allegations contained in the fifth sentence of paragraph 16.

17. Admits the allegations contained in the first sentence of paragraph 17 that ACIP created priority groups that it recommended receive the injectable flu vaccine, and that those groups included children under 2, people over 65, pregnant women, residents of nursing homes, and those of any age with one or more chronic medical conditions; denies the remainder of the allegations contained in the first sentence of paragraph 17. Admits the allegation contained in the second sentence of paragraph 17 that active military personnel generally did not meet the criteria listed in the first sentence; denies the remainder of the allegations contained in the second sentence of paragraph 17.

18. Denies the allegations contained in paragraph 18 for lack of knowledge or information sufficient to form a belief as to their truth.

19. Admits the allegations contained in the first sentence of paragraph 19. Denies the allegations contained in the second sentence of paragraph 19. Admits the allegations contained in the third sentence of paragraph 19.

20. Admits the allegations contained in the first sentence of paragraph 20 to the extent

supported by the "final decision" cited, which is the best evidence of its contents; otherwise denies the allegations contained in the first sentence of paragraph 20. Admits the allegation contained in the second sentence of paragraph 20. Admits the allegations in the third sentence of paragraph 20 to the extent supported by the "decision" cited, which is the best evidence of its contents; otherwise denies the allegations contained in the third sentence of paragraph 20. Admits the allegation contained in the fourth sentence of paragraph 20 that DSCP reserved its right to acquire a similar vaccine; denies the remainder of the allegations contained in the third sentence of paragraph 20.

21. Admits.

22. Admits the allegations contained in the first sentence of paragraph 22 to the extent supported by the referenced motion for summary judgment, which is the best evidence of its contents; otherwise denies the allegations contained in the first sentence of paragraph 22. Admits the allegations contained in the second sentence of paragraph 22. Admits the allegations contained in the third sentence of paragraph 22 to the extent supported by the referenced decision, which is the best evidence of its contents; otherwise denies the allegations contained in the third sentence of paragraph 22.

23. Admits the allegation contained in the first sentence of paragraph 23 to the extent supported by the "final decision" cited, which is the best evidence of its contents; otherwise denies the allegations contained in the first sentence of paragraph 23. Admits the allegation contained in the second sentence of paragraph 23. Admits the allegations contained in the third sentence of paragraph 23 to the extent supported by the "decision" cited, which is the best evidence of its contents; otherwise denies the allegations contained in the third sentence of

paragraph 23.

24. The allegation contained in paragraph 24 constitutes plaintiff's characterization of its case to which no response is required; to the extent that it may be deemed an allegation of fact, it is denied.

**DSCP Is Not Entitled To Excess Reprocurement Costs**

25. The allegations contained in paragraph 25 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

**Voluntary Purchase of FluMist**

26. The allegation contained in paragraph 26 constitutes a conclusion of law to which no response is required; to the extent it may be deemed an allegation of fact, it is denied.

27. Admits the allegation contained in the first sentence of paragraph 27 that DSCP had arranged for DoD access to the injectable flu vaccine, FluZone, before terminating GIV's contract; denies the remainder of the allegations contained in the first sentence of paragraph 27. Admits the allegation contained in the second sentence of paragraph 27. The allegation contained in the third sentence of paragraph 27 constitutes a conclusion of law to which no response is required; to the extent it may be deemed an allegation of fact, it is denied.

**Purchase of FluMist Before Asserted Default**

28. Denies.

29. Admits the allegation contained in the first sentence of paragraph 29 that DSCP made its initial purchase of FluMist on October 7, 2004; denies the remainder of the allegations contained in the first sentence of paragraph 29. Admits the allegation contained in the second sentence of

paragraph 29 that DSCP indicated on the March 7, 2005, purchase order of FluMist that the FluMist so ordered was a reprocurement of a terminated quantity of flu vaccine; denies the remainder of the allegations contained in the second sentence of paragraph 29.

**Purchase of Dissimilar Product**

30. The allegations contained in the first sentence of paragraph 30 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied. Admits the allegation contained in the second sentence of paragraph 30 that FluMist is more expensive than Fluvirin and FluZone; denies the remainder of the allegations contained in the second sentence of paragraph 30.

31. The allegations contained in the first, second and third sentences of paragraph 31 constitute conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied. Admits the allegation contained in the fourth sentence of paragraph 31. The allegation contained in the fifth sentence of paragraph 31 constitutes a conclusion of law to which no response is required; to the extent it may be deemed an allegation of fact, it is denied.

32. The allegation contained in the first sentence of paragraph 32 constitutes a conclusion of law to which no response is required; to the extent it may be deemed an allegation of fact, it is denied. Denies the allegations contained in the second and third sentences of paragraph 32 for lack of knowledge or information sufficient to form a belief as to their truth. The allegation contained in the fourth sentence of paragraph 32 constitutes a conclusion of law to which no response is required; to the extent it may be deemed an allegation of fact, it is denied.

33. The allegations contained in the first sentence of paragraph 33 constitute conclusions of

law to which no response is required; to the extent they may be deemed allegations of fact, they are denied. Denies the allegations contained in the second sentence of paragraph 33 for lack of knowledge or information sufficient to form a belief as to their truth. The allegation contained in the third sentence of paragraph 33 constitutes a conclusion of law to which no response is required; to the extent it may be deemed an allegation of fact, it is denied.

34. Denies the allegations contained in paragraph 34 for lack of knowledge or information sufficient to form a belief as to their truth.

35. Admits the allegation contained in paragraph 35 that FluMist is more expensive than Fluvirin; denies the remainder of the allegations contained in paragraph 35 for lack of knowledge or information sufficient to form a belief as to their truth.

36. The allegations contained in paragraph 36 constitute conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

37. The allegations contained in paragraph 37 constitute conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

**Untimely Demand for Payment**

38. The first sentence contained in paragraph 38 constitutes a conclusion of law to which no response is required; to the extent it may be deemed an allegation of fact, it is denied. Admits the allegations contained in the second sentence of paragraph 38.

39. The allegation contained in paragraph 39 constitutes a conclusion of law to which no response is required; to the extent it may be deemed an allegation of fact, it is denied.

40. The allegation contained in paragraph 40 constitutes a conclusion of law to which no response is required; to the extent it may be deemed an allegation of fact, it is denied.

41. Denies that plaintiff is entitled to the relief set forth in the prayer for relief immediately following paragraph 40, or to any relief whatsoever.

42. Denies each and every allegation not previously admitted or otherwise qualified.

**Defendant's Counterclaim**

43. This Court has jurisdiction over this counterclaim pursuant to 28 U.S.C. §§ 1503 and 2508.

44. On January 14, 2004, Defense Supply Center Philadelphia ("DPSC") issued Solicitation No. SP0200-04-R-0005 for influenza virus vaccine for the 2004-2005 flu season.

45. Solicitation No. SP0200-04-R-0005 did not seek any specific brand of flu vaccine.

46. In response to Solicitation No. SP0200-04-R-0005, plaintiff General Injectables & Vaccines, Inc. ("General Injectables" or "plaintiff") submitted an offer indicating that it could supply the injectable flu vaccine Fluvirin, which was a product of Chiron Vaccines, during the 2004-2005 flu season.

47. DSCP also received an offer in response to Solicitation No. SP0200-04-R-0005 from Aventis Pasteur, Inc. ("Aventis"), which indicated that Aventis could supply the injectable flu vaccine FluZone during the 2004-2005 flu season.

48. On April 21, 2004, DSCP awarded Contract No. SP0200-04-D-0003 to General Injectables and issued a delivery order for (1) 226,846 vials of Fluvirin vaccine at a price of $64.60 per 10-dose vial and (2) 17,460 syringe units of Fluvirin vaccine at a price of $86.00 per 10-dose package.

49. DSCP's contract with General Injectables incorporated by reference FAR 52.212-4, which includes a provision allowing DSCP to terminate General Injectables in the event of

default.

50. On April 21, 2004, DSCP awarded Contract No. SP0200-04-D-0004 to Aventis and issued a delivery order for a total of 132,684 vials of FluZone vaccine at a price of $63.31 per 10-dose vial.

51. Through its contracts with General Injectables and Aventis, DSCP secured enough flu vaccine to meet the flu vaccination needs of approximately 3.769 million people under the Department of Defense ("DoD") vaccination umbrella during the 2004-2005 flu season.

52. In the summer of 2004, before General Injectables ever shipped any vaccine called for in its contract, Fluvirin's manufacturer, Chiron Vaccines, discovered contamination in its product.

53. By September 2004, Chiron's license to operate had been suspended, an occurrence that prevented Chiron from shipping any Fluvirin to the United States for use in the 2004-2005 flu season.

54. On October 12, 2004, General Injectables' parent company, Henry Schein, sent a letter to DoD formally advising that the company would be unable to fill any orders for Fluvirin vaccine for the current flu season.

55. The unavailability of Fluvirin created a shortage of flu vaccine supply in the United States.

56. In direct response to the flu vaccine shortage created by the unavailability of Fluvirin, the Department of Defense ("DoD") was forced to secure on an expedited basis as much of the remaining national flu vaccine supply as possible in an effort to vaccinate at least priority personnel within DoD, as well as individuals with special health needs.

57. Under DoD's priority vaccination plan, for example, deploying soldiers and individuals

who were sick would be vaccinated with the available flu vaccine in advance of healthy individuals and recruits .

58. By the end of October 2007, DSCP managed to secure enough flu vaccine for approximately two million people.

59. DSCP managed to close the approximate 700,000 dose gap between the 1,326,840 doses of FluZone already secured from Aventis and the two million doses that were necessary to vaccinate the members of DoD's priority groups by purchasing quantities of two separate flu vaccines.

60. First, on October 4, 2004, DSCP purchased 25,000 packages (250,000 doses) of the flu vaccine FluMist from MedImmune at $104.79 per package.

61. Second, on October 21, 2004, DSCP modified its original contract with Aventis to reflect its purchase, at a price of $63.31 per vial, of an additional 50,000 vials (500,000 doses) of FluZone over and above what Aventis had already agreed to supply in its original contract.

62. Both FluZone and FluMist are similar to Fluvirin in that all three products are vaccines against influenza.

63. DSCP's requirements to procure 25,000 packages of FluMist and 50,000 vials of FluZone were a direct result of General Injectables' inability to supply contract quantities of Fluvirin.

64. On or about November 4, 2004, acting at the request of the Department of Health and Human Services ("HHS"), DoD amended its contract with Aventis to reduce its total purchase of FluZone by 20,000 packages (200,000 doses), thus freeing up that quantity of vaccine for use in the civilian, non-DoD, population.

65. On November 15, 2004, DSCP terminated General Injectables for defaulting on its obligation to supply the contract quantity of Fluvirin.

66. Through a series of contract modifications executed between December 2004 and March 2005, DSCP purchased 33,795 packages of FluMist above the 25,000 packages that it had bought in October.

67. A portion of DSCP's FluMist purchase, i.e., 20,000 packages of FluMist, during the time period from December 2004 to March 2005 was made to replace the 20,000 vials of FluZone that DoD had relinquished for civilian use.

68. However, 13,795 of the 33,795 packages of FluMist that DSCP purchased during the time period from December 2004 to March 2005 were obtained in response to demands by components of DoD for additional quantities of flu vaccine.

69. As such, DSCP's requirements to procure a total of 38,795 packages of FluMist at a price of $104.79 per package between October 2004 and March 2005 were a direct result of General Injectables' inability and failure to deliver contract quantities of Fluvirin in breach of its agreement with DSCP.

70. On December 11, 2006, the contracting officer issued a demand letter to GIV seeking excess reprocurement costs of $2,362,971.05 associated with DoD's ultimate purchase of a total of 58,475 packages of FluMist.

71. The demand letter did not take into account the fact that DoD had voluntarily relinquished its right to 20,000 vials of FluZone for use by the Department of Health and Human Services.

72. The demand letter also did not take into account that the 50,000 vials of FluZone that

DSCP had purchased in October 2004 to replace 50,000 vials of the undelivered Fluvirin were $1.29 cheaper per vial than the Fluvirin than DSCP originally planned to purchase under its contract with General Injectables.

73. In light of the foregoing considerations, DSCP incurred excess reprocurement costs in the amount of $1,494,671.05, a figure which reflects the purchase price of 38,795 packages of FluMist at $104.79 per package, minus the $64,500 that DSCP saved by replacing 50,000 vials of undelivered Fluvirin at $64.60 per vial with 50,000 vials FluZone at $64.31 per vial.

74. At all times the Government acted reasonably to minimize the excess costs resulting from GIV's default.

75. General Injectables is, therefore, liable to the Government for excess reprocurement costs incurred in the amount of $1,494,671.05, as a result of the breach of its contract to supply Fluvirin to DSCP.

PRAYER FOR RELIEF

WHEREFORE, defendant respectfully requests that the Court enter judgment in its favor, order that the complaint be dismissed, and grant defendant a monetary judgment against General Injectables in the amount of $1,494,671.05, and such other and further relief as the Court may deem just and proper.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Mark A. Melnick
MARK A. MELNICK
Assistant Director

s/ A. Bondurant Eley
A. BONDURANT ELEY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tel: (202) 616-8254
Fax: (202) 514-8624

July 9, 2007

Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this 9th day of July, 2007, a copy of the foregoing Answer was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ A. Bondurant Eley