Before the
ARMED SERVICES BOARD OF CONTRACT APPEALS
Falls Church, VA 22041-3201

| | | |
|---|---|---|
| Appeal of<br>General Injectables & Vaccines, Inc.<br><br>Under Contract No.<br>SP0200-04-D-0003 | ) | ASBCA No. 54930 |

## GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 5 of the Armed Services Board of Contract Appeals, the Government moves for an Order granting summary judgment denying the appeal as a matter of law because there is no genuine material issue of fact.

## INTRODUCTION

The instant appeal arises from the Government's termination of Appellant's contract for flu vaccine. The contract was terminated for cause after Appellant failed to deliver vaccine for the 2004 flu season. Appellant's failure to deliver was due to the suspension of its supplier's operations after bacterial contamination was discovered.

Appellant challenges the propriety of the termination. In brief, Appellant contends that its default is excusable because (i) Appellant does not control and is not

responsible for its supplier, and (ii) various actions taken by British and U.S. regulatory agencies may performance impossible. Additionally, Appellant claims that it is not liable for excess reprocurement costs because DSCP did not (i) demonstrate that it incurred such costs, (ii) obtain an acceptable substitute for the terminated product, or (iii) mitigate costs.

## STATEMENT OF FACTS

1. On January 14, 2005, Defense Supply Center Philadelphia, ["DSCP"], issued Solicitation No. SP0200-04-R-0005 for influenza virus vaccine for the 2004/2005 season. (R4, tab 1; Complaint, para. 4). The solicitation did not seek any specific "brand" of vaccine. (Re, tab 1).

2. In response to the solicitation, Appellant, General Injectables & Vaccines, Inc. submitted an offer dated February 13, 2005 for an estimated 347,680 vials or 3,191,800 doses. (R4, tab 1, p. 6). Appellant's offer indicated that it would supply a vaccine, Fluviron®, produced by Chiron Vaccines, a British company. (R4, tab 1, p. 15; Complaint, para. 4).

3. On April 21, 2004, DSCP awarded Appellant Contract No. SP0200-04-D-0003 for an indefinite quantity of injectable vaccine. (R4, tab 8; Complaint, para. 7). Also, on April 21, 2004, DSCP issued Delivery Order 8001 for 226,846 vials of vaccine and 17,460 packages of syringes. (Government Exhibit ["GX"] 1; Complaint, para. 8). Under the terms of the delivery order, Appellant was required to deliver 25% of the

ordered quantity by no later than September 30, 2004, 25% of the ordered quantity no later than October 31, 2004 and 50% of the ordered quantity by no later than November 30, 2004. (GX 1, p. 2; Complaint, para. 8).

4. Prior to the delivery of any vaccine, Appellant's supplier, Chiron, discovered bacterial contamination in certain lots of the vaccine it had produced for the 2004/2005 flu season. On or about August 25, 2004, Chiron notified the U.S. Food and Drug Administration ["FDA"] of the discovery and advised that it could not release any flu vaccine for importation to the U.S. until both the British and U.S. authorities deemed the product safe and saleable. (Complaint, para. 10). On August 26, 2004,Chiron issued a press release addressing the contamination. (See R4, tab 14, p. 2).

5. Between September 28, 2004 and September 30, 2004, the Medicines and Healthcare Products Regulatory Agency ["MHRA"], the British equivalent of the FDA, conducted an inspection of Chiron's facility. (Complaint, para. 11). On October 5, 2004, the MHRA suspended Chiron's license to operate for three months. (Complaint, para. 12).

6. Between October 10 and October 15, 2004, the FDA conducted its own inspection of the Chiron facility and on October 15, 2004, the FDA banned all shipments of Fluviron® to the U.S. (Complaint, para. 13). The FDA also determined that none of the Fluviron® already in the U.S. could be used in this country because of safety concerns. (Complaint, para. 14).

7. Due to the nonavailability of Chiron manufactured Fluviron®, a vaccine shortage ensued. (Complaint, para. 16). In response to the shortage, the Center for Disease Control ["CDC"] developed a priority list and urged that entities in possession of injectable vaccine make it available only to those persons on the list. (Complaint, para. 18, 19).

8. By letter dated October 12, 2004, Appellant informed DSCP that Chiron would not be able to supply any vaccine for the 2004-2005 flu season and therefore Appellant would be unable to fill any orders for Fluviron vaccine. Appellant further advised that it was not optimistic that it would be able to find any alternative supply of vaccine. (R4, tab 13; Complaint, para, 22).

9. Appellant never obtained any alternative injectable vaccine to fulfill its contractual obligation. (Complaint, para. 25).

10. Appellant failed to deliver any vaccine under the contract. Due to Appellant's default, the contract and the delivery order were terminated for cause by letter and by modifications dated November 15, 2004. (R4, tabs 15, 16, 17; Complaint, para. 26).

11. The contract incorporated, by reference, FAR Clause 52.212-4, Contract Terms And Conditions – Commercial Items (Oct 2003). (R4, tab 1,

p. 9).

12. FAR 52.212-4(f) and (m) provide:

(f) Excusable delays. The Contractor shall be liable for default unless nonperformance is caused by an occurrence beyond the reasonable control of the Contractor and without its fault or negligence such as, acts of God or the public enemy, acts of the Government in either its sovereign or contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, unusually severe weather, and delays of common carriers. The Contractor shall notify the Contracting Officer in writing as soon as it is reasonably possible after the commencement of any excusable delay, setting forth the full particulars in connection therewith, shall remedy such occurrence with all reasonable dispatch, and shall promptly give written notice to the Contracting Officer of the cessation of such occurrence.

(m) Termination for cause. The Government may terminate this contract, or any part hereof, for cause in the event of any default by the Contractor, or if the Contractor fails to comply with any contract terms and conditions, or fails to provide the Government, upon request, with adequate assurances of future performance. In the event of termination for cause, the Government shall not be liable to the Contractor for any amount for supplies or services not accepted, and the Contractor shall be liable to the Government for any and all rights and remedies provided by law. If it is determined that the Government improperly terminated this contract for default, such termination shall be deemed a termination for convenience

## ARGUMENT

### I. APPELLANT'S CHALLENGE TO THE TERMINATION FOR CAUSE SHOULD BE DENIED AS A MATTER OF LAW.

#### A. STANDARD OF REVIEW FOR SUMMARY JUDGMENT

The procedure for granting summary judgment is found in Fed. R. Civ. P. 56(c), which provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Matsushita Electrical Industrial Co. v. Zenith Radio Corp.* 475 U.S. 574 (1986); *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989).

In responding to a summary judgment motion, the non-moving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257). The non-moving party must adduce more than a scintilla of evidence to overcome a summary judgment motion; it is not sufficient for the non-moving party to merely "show that there is some metaphysical doubt as to the material facts" *Matsushita*, 475 U.S. at 586. Moreover, '[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Anderson*, 477 U.S. 249-50. Rather, the non-moving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. Summary judgment is required as a matter of law if a defendant can demonstrate the absence of a

genuine issue of material fact as to any one of the essential elements of plaintiff's cause of action. *Anderson*, 477 U.S. 247-48.

### B. APPELLANT'S FAILURE TO DELIVER CONSTITUTES A DEFAULT UNDER THE TERMS OF THE CONTRACT.

When the Government terminates for failure to deliver, it can establish a prima facia case by showing that the contractor failed to meet the delivery schedule. *Cantrill Development Corp.* ASBCA Nos. 30160 et. Al., 89-2 BCA 21,635 at 108,849. In the instant case, there is no dispute that Appellant failed to deliver in accordance with the delivery schedule. As noted in the Statement of Facts, the contract set forth a delivery schedule requiring delivery of 25% of each awarded quantity no later than September 30, 2004, an additional 25% of each awarded quantity no later than October 31, 2004, and the final 50% no later than November 30, 2004. (Statement of Fact number, [hereinafter "F"] 3). Appellant missed the September 30, 2004 delivery date. (F 10). By letter dated October 12, 2004, Appellant informed the Government that it would be unable to fill any orders for Fluviron® vaccine for the current flu season, and didn't believe it would be able to obtain any alternative vaccine. (F 8). Three weeks later Appellant missed the second delivery increment. (F 10). Appellant's repudiation and failure to deliver in accordance with the contract schedule constitutes a default.

Under the circumstances, traditional alternatives to a termination for default were not pursued. A revised delivery schedule was not feasible as the 2004 – 2005 flu season was rapidly approaching and Appellant had already indicated that it could not obtain another source of supply for injectable vaccine. (F 8, 9). A no cost settlement

was not an option as flu vaccine was still needed by the military and reprocurement costs were expected to be incurred. (R4, tab 14, para. 7-9). Consequently, the entire contract quantity was terminated for cause. (F10).

## C. APPELLANT HAS NOT SHOWN EXCUSABLE DELAY.

The Contract Terms And Conditions clause of the contract gives the Government the right to terminate for failure to deliver unless the failure is excusable. (F 12). The governing clause limits excusable delays to those that are "caused by an occurrence beyond the reasonable control of the Contractor and without its fault or negligence". (F 12).

### 1. The Fact That Appellant's Supplier Could Not Perform Does Not Constitute Excusable Delay.

Appellant contends that it is not responsible for Chiron's delivery failure because Appellant functioned merely as a delivery service and played in role in manufacture of the vaccine. (Complaint, para. 36, 37, 59-78). Appellant's contention is meritless.

Appellant ignores the fact that the contract clearly required Appellant to **obtain** the vaccine as contractor furnished material. Contrary to Appellant's assertion, delivery was only one component of performance. In obligating itself to obtain the vaccine from a third party, Appellant assumed the risk of Chiron's failure to deliver. *Bayou Machine* N/A *Co.*, ASBCA 36853, 89-1 BCA 21,200 (1988). *See also H.C. Machine Co.*, ASBCA 32932, 89-1 BCA 21,247 (1988) (Generally, the failure of the contractor's supplier to provide material will not excuse the contractor's default).

A supplier's failure to deliver will excuse a prime's default only if the supplier's default is excusable. *Bichler Co.*, ASBCA 30680, 89-1 BCA 21,320 (1988). In the instant case, the cause for Chiron's nondelivery was due to the discovery of bacterial contamination in its facility. (F 4, 5, 6, 7). This event is not an occurrence beyond Chiron's reasonable control. To the contrary, Chiron was the only party involved who could have prevented the contamination by maintaining a sanitary environment in its manufacturing facility.

2. The MHRA's and FDA's Regulatory Actions Do Not Constitute Excusable Delay.

Appellant argues that in suspending Chiron's operations and banning the release of its stock, the MHRA and FDA were acting in their sovereign capacities and therefore Appellant's default is excusable under the Contract Terms And Conditions clause. This argument is unavailing.

Chiron's negligence caused the bacterial contamination. That contamination necessitated the intervention of the MHRA and FDA which are tasked with the responsibility of protecting the public from tainted pharmaceutical products. When a Governmental agency is forced to act due to a contractor's (or vendor's) negligence or misdeeds, the action can not form the basis of an excusable delay. See *Sig-Trans, Inc.*, ASBCA No. 10557, 66-1 BCA 5422 at 25,459 (IRS' closure of supplier's plant due to enforcement of tax lien is not the sort of sovereign act which excuses performance);

*TPI International Airways, Inc.*, ASBCA No. 46,462, 96-2 BCA 28,373 at 141,696 (suspension from participation in DOD Air Transportation Program due to failure to comply with acceptable standards for maintenance is not beyond contractor's control or without its fault); *Guaranty Construction Co., Inc.*, ASBCA No. 15,325, 1970 WL 1225 (Dec. 15, 1970) (subcontractor's default caused by its tax problems with federal authorities not excusable delay for prime).

To the extent that Appellant may argue that the actions of the MHRA and/or the FDA were improper, the Board has held that it has no authority to review the actions or determinations of an agency that is not party to the contract when it is acting in its capacity as an independent, regulatory body. *Custom Blending & Packaging, Inc.* ASBCA No. 49,819, 00-2 BCA 31,083; *TPI International Airways, Inc.*, ASBCA No. 46,462, 96-2 BCA 28,373, *af'd on reconsid.*, 96-BCA 28,602, *aff'd,* 135 F.3d 776 (Fed. Cir. 1998).

Appellant also argues that under the contract, the FDA was required to release the vaccine as a condition precedent to Appellant's delivery, and since the vaccine was never released, Appellant's performance obligation was never triggered. (Complaint, para. 38 - 44). This argument is senseless. Appellant was required to comply with the formulary requirements and quality standards of the U.S. Pharmacopeia. (R4, tab 1 – Salient Characteristics). Appellant failed to do this. Consequently, Appellant never offered a product for release that complied with the contract requirements. The

Government's rejection of noncomforming end items does not constitute excusable delay under the terms of the contract.

Finally, Appellant argues that because the CDC took control of the distribution of injectable vaccine, Appellant could not cure its default by obtaining another source of supply, therefore, Appellant concludes that its default is excusable. (Complaint, para. 63- 69). This argument is unavailing.

Contrary to Appellant's assertion, it was not impossible to obtain a substitute vaccine. Flu-Mist was available to Appellant and was an acceptable alternative. (R4, tab 14, para. 9; Complaint, para. 67). Appellant was well aware of this alternative as it received an award for Flu-Mist on October 7, 2004. (R4, tab 14, para.9). Moreover, Appellant's argument ignores the obvious. Appellant's supplier was responsible for causing the shortage which necessitated CDC's action. Consequently, to the extent an impossibility of performance existed, it was created by Appellant.

## II. APPELLANT'S CHALLENGE TO THE ASSESSMENT OF REPROCUREMENT COSTS IS PREMATURE

Additionally, Appellant claims that it is not liable for excess reprocurement costs because DSCP did not claim an incurred cost, obtain a similar substitute, or mitigate costs. (Complaint, para. 79-96). However, there is no Government claim to challenge, as the Government has not yet issued any demand for excess reprocurement costs. Consequently, the Board lacks jurisdiction over Count IV of Appellant's Complaint.

CONCLUSION

For the reasons stated above, Summary Judgment should be granted to the Government and Appellant's Appeal should be denied.

Dated: July 8, 2005

KATHLEEN D. HALLAM
Chief trial Attorney