PROSKAUER ROSE LLP

1233 Twentieth Street NW, Suite 800
Washington DC 20036-2396
Telephone 202.416.6800
Fax 202.416.6899

NEW YORK
LOS ANGELES
BOSTON
BOCA RATON
NEWARK
NEW ORLEANS
PARIS

Joseph E. Casson
Partner

Direct Dial 202.778.1111
jcasson@proskauer.com

August 12, 2005

Catherine A. Stanton
Recorder
Armed Services Board of Contract Appeals
Skyline Six, Room 703
5109 Leesburg Pike
Falls Church, Virginia 22041-3208

RECEIVED
2005 AUG 12 P 2:21
ARMED SERVICES BOARD OF CONTRACT APPEALS

Re: ASBCA No. 54930
Appeal of General Injectables & Vaccines, Inc.
Under Contract No. SP-0200-04-D-0003

Dear Ms. Stanton:

On July 8, 2005, the Government filed a Motion for Summary Judgment in the above referenced case. General Injectables & Vaccines, Inc. ("GIV" or the "Appellant") submits this Response to the Government's Motion for Summary Judgment and in support of its Cross Motion for Summary Judgment. In the event that both the Government's and GIV's Motions are denied, GIV respectfully requests that the Armed Services Board of Contract Appeals set this appeal for hearing during the week or September 13, 2005 or September 20, 2005, in accordance with GIV's letter dated June 14, 2005.

## INTRODUCTION

This appeal arises from the Government's termination for cause of GIV's contract to deliver injectable flu vaccine during the 2004-2005 flu season, and the Government's assertion of its intent to assess reprocurement costs against GIV related to the termination for cause. GIV

challenged the termination for cause and reprocurement action on the bases that (1) there was no default because the conditions precedent to GIV's obligation to perform under the delivery contract at issue, i.e., availability of Fluvirin® and FDA release of vaccine, had not been met (Count I of Complaint); (2) there was no default because GIV's duty to deliver was excused by operation of law, i.e., FDA refusal to permit the release of Fluvirin® into the United States, FDA embargo of Fluvirin® from Great Britain, the acts of the CDC and HHS to control the distribution of Fluvirin® only to individuals on a government approved priority list (Count II of Complaint); (3) Chiron was not a subcontractor of GIV, and GIV had no liability under the contract for Chiron's inability to ship flu vaccine (Count III of Complaint); and (4) GIV is not liable for excess reprocurement costs because the Government has not incurred costs related to the purchase of an injectable flu vaccine substantially similar to the product ordered under the subject contract (Count IV of Complaint).

## STATEMENT OF FACTS

1. On January 14, 2004, Defense Supply Center Philadelphia, on behalf of the Department of Defense, issued Solicitation No. SP0200-04R-0005 requesting a bid from GIV to deliver Fluvirin® injectable flu vaccine to DoD employees for the 2004-2005 flu season. (R4, Tab1; Complaint ¶4). The Government's Motion erroneously proffers that "the solicitation did not seek any specific 'brand' of vaccine." (Government's Motion, Statement of Facts (hereinafter "F") ¶1 at page 2). In fact, the Government has admitted that DoD contracted only for injectable flu vaccine, and further admitted that the product contracted for was only Fluvirin®. Answer ¶4; *see also* Answer ¶7 ("It is admitted that on April 21, 2004, DSCP

awarded GIV the contract to deliver Fluvirin to its DoD customers."). Thus, there is no dispute as to the fact that the product at issue in this appeal is the "branded" Fluvirin® injectable flu vaccine.

2. In response to the Solicitation, GIV submitted an offer dated February 13, 2004[1] to deliver Fluvirin® to the Government. (R4, Tab 1, page 6). GIV's offer put the Government on notice that (1) the product being contracted for was Fluvirin® (Government's Motion, F¶2 at page 2); (2) GIV was not the manufacturer of the contracted-for flu vaccine, (R4, Tab 1, pages 15-16; Government's Motion, F¶2 at page 2; Complaint ¶5); and (3) the contracted-for flu vaccine was manufactured by Chiron Vaccines, a British company, located in Liverpool, England. (R4, Tab 1, pages 15-16; Government's Motion, F¶2 at page 2; Complaint ¶5)

3. On April 21, 2004, DSCP awarded GIV Contract No. SP0200-04-D-0003 for an indefinite quantity of injectable vaccine. (R4, Tab 8; Complaint ¶7; Government's Motion, F¶3 at page 2). On the same day as the award, DSCP issued Delivery Order No. SP0200-04D-003-8001, requesting delivery of 226,846 Vials of Fluvirin® and 17,460 Packages of Syringe Units. (R4, Tab 8, page 2 of 3; Government Exhibit ("GX"); Government's Motion, F¶3 at page 2; Complaint ¶8). Under the terms of the Delivery Order and the Contract, DoD requested delivery of 25% of the ordered quantity by no later than September 30, 2004, an additional 25% of the ordered quantity by no later than October 31, 2004, and the final 50% of the ordered quantity by no later than November 30, 2004. (Id.; Government's Motion, F¶3 at pages 2-3).

---

1 The Government's Motion erroneously indicates that GIV submitted its offer under the Solicitation on February 5, 2005. Government's Motion, F¶2.

4. The Contract was awarded subject to clauses that expressly conditioned GIV's delivery of Fluvirin® on certain conditions precedent, such as "release of the vaccine" (R4, Tab 1, page 4; Complaint ¶41; Answer ¶41), "upon FDA release of vaccine," (R4. Tab 4. Amendment 00003 at page 2; R4, Tab 4, Amendment 00003 at page 8; R4, Tab 6, page 4; R4, Tab 8, pages 2-3; R4, Tab 9, page 5; Complaint ¶¶38, 39, Answer ¶¶38, 39), "contingent upon release of product from the manufacturer" (R4, Tab 7), and "dependent upon product availability" (R4, Tab 4, Amendment 00003 at page 8; R4, Tab 6, page 4; R4, Tab 8, page 3; R4, Tab 9, page 5; Complaint ¶¶38, 39, Answer ¶¶38, 39). The bid clearly notified the Government that GIV "May have to alter delivery schedule outlined in bid due to releases of vaccine" (R4, Tab 1, page 4; Complaint ¶35, Answer ¶35). There is no dispute that the Offer and Contract Award included these conditions precedent, and that GIV had expressly conditioned its obligation to deliver Fluvirin® on the availability of the flu vaccine, and the release of the vaccine by both the manufacturer of the product and the FDA. *See* Answer ¶¶ 35, 38, 39, 41.

5. Prior to the delivery of any Fluvirin® by Chiron to any of its U.S. distributors, Chiron discovered bacterial contamination in a small number (eight) lots of final vaccine produced for the 2004/2005 flu season. On or about August 25, 2004, Chiron notified the United States Food and Drug Administration ("FDA") of the discovery and advised that it (Chiron) could not release any flu vaccine for importation to the United States until both British and United States authorities affirmatively deemed its product safe and saleable. (Complaint ¶9; Answer ¶9; R4, Tab 14, page 1; Government's Motion, F¶4 at page 3). On August 26, 2004, Chiron issued a Press Release addressing the "small number of lots that did not meet product

sterility specifications", that it "would delay releasing any Fluvirin® doses until it had completed additional release tests," and that it "expected testing would delay product release until early October." (R4, Tab 14, pages 1-2; Government's Motion, F¶4 at page 3).

6. Between September 28, 2004 and September 30, 2004, the Medicines and Healthcare Products Regulatory Agency ("MHRA"), the British equivalent of the FDA, conducted an inspection of Chiron's Liverpool manufacturing facility. (Complaint ¶11, Answer ¶11; Government's Motion, F¶5 at page 3). On October 5, 2004, following an inspection lasting from September 28 to September 30, 2004 , the MHRA suspended Chiron's license to operate for three months. (Complaint ¶12, Answer ¶12; Government's Motion, F¶5 at page 3).

7. Between October 10 and October 15, 2004, the FDA conducted its own inspection of the Chiron Fluvirin® manufacturing facility in Liverpool, England, and on October 15, 2004, the FDA embargoed all shipments of Chiron-manufactured Fluvirin® to the United States. (Complaint ¶13; Answer ¶13; Government's Motion, F¶6 at page 3). The FDA determined that none of the Fluvirin® already in the U.S. could be used in this country because of safety concerns. (Complaint ¶14; Answer ¶14; Government's Motion, F¶6 at page 3).

8. As a result of the determination by the FDA that none of the Chiron-manufactured Fluvirin® could be safely released for use in the U.S., a "flu shortage" ensued because the only other manufacturer of injectable flu vaccine, Aventis, could not manufacture sufficient quantities of its injectable flu vaccine, Fluzone®, in time for use for the 2004-2005 flu season. (Complaint ¶16; Answer ¶16; Government's Motion, F¶7 at page 4). In order to best coordinate the distribution of all available Fluzone® injectable flu vaccine, the CDC developed a list of priority

groups, and communicated the priority list to the general public. The vaccination priority groups included children under the age of 2, persons over the age of 65, pregnant women, persons who live in nursing homes, and persons between 2 and 64 years of age with a chronic medical condition, such as diabetes, cardiac or respiratory disease, or immune disorder. (Complaint ¶¶17, 18; Answer ¶¶17, 18). In response to the flu vaccine shortage, the CDC urged that distributors that did have Fluzone® available deliver their available product only to health care professionals serving individuals included in the priority groups identified by the CDC. (Complaint ¶¶18, 19; Answer ¶¶18. 19; Government's Motion, F¶7 at page 4)

9. The Government's Motion at Statement of Fact #9 incorrectly proffers that GIV "never obtained any alternative injectable vaccine," and mischaracterizes the Statement of Fact at Paragraph 25 of the Complaint. It is undisputed that the CDC and the states acted to coordinate the distribution of all injectable flu vaccine available in the United States, (Complaint ¶25, Answer ¶25). The coordinated efforts of the CDC and the states prevented GIV from delivering any injectable flu vaccine it may have been able to obtain to the DoD.

10. The DoD gave up approximately 200,000 doses of injectable flu vaccine it had to those persons in the priority population who could not take FluMist®, and substituted FluMist® for those 200,000 doses of injectable flu vaccine that had been available to it. (Complaint ¶20; Answer ¶20).

11. On October 7, 2004, DoD placed an order for FluMist®. (Complaint ¶24; Answer ¶24).

12. By letter dated October 12, 2004, GIV informed DSCP that Chiron would not be able to supply any flu vaccine for the 2004/2005 flu season because Chiron was prevented from releasing any of the product, and therefore GIV would be unable to fill any orders for Fluvirin® vaccine for the 2004/2005 flu season. GIV further advised that it was making good faith efforts to identify alternative sources of supply of injectable flu vaccine in order to satisfy all or part of the Delivery Order, but was not optimistic that such supplies existed. (Complaint ¶¶21, 22; Answer ¶¶21, 22; Government's Motion, F¶8 at page 4).

13. On November 15, 2004, DoD issued a final decision of its contracting officer to GIV terminating the Contract for cause, claiming that GIV failed to make timely delivery under the Contract and that the failure to deliver was not due to excusable causes. (Complaint ¶26, Answer ¶26; Government's Motion, F¶10 at page 4).

14. The November 15, 2004 final decision also indicated that DoD intended to seek costs of reprocurement as a result of the termination action. The November 15, 2004 final decision did not identify the amount of the costs DoD was claiming against GIV, nor did the final decision identify the basis for DoD's claim for reprocurement costs. (Complaint ¶27, Answer ¶27). In a telephone conference on February 10, 2005, DoD informed GIV that the difference in cost between the Fluvirin® ordered under the Contract, and FluMist®, which was "reprocured" on October 7, 2004, was approximately $2,300,000. (Complaint ¶29, Answer ¶29)

15. The Delivery Contract incorporated, by reference, FAR Clause 52.212-4, which provides, among other things, for waiver of liability for excusable default. (R4, Tab 1, page 9; Government's Motion, F¶11 at page 4)

## STANDARD OF REVIEW FOR SUMMARY JUDGMENT

A summary judgment motion is properly granted only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. The burden is on the movant to establish the absence of any genuine issues of material fact. *Mingus Constructors, Inc., v. United States*, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987); *Arnold V. Hedberg*, ASBCA No. 31747, 90-1 BCA par. 22,577 at 113,313-14. Furthermore, all reasonable inferences must be construed in favor of the party opposing the motion. *Kasel Manufacturing Co.* ASBCA No. 26975, 86-1 BCA par. 18,697.

Here, the Government's Motion must be denied because the Government has failed to demonstrate that it is entitled to judgment as a matter of law. GIV's Motion should be granted because, even construing inferences in favor of the Government, GIV has proven that it was not in default of the Contract, and further that its inability to deliver the contracted-for Fluvirin® injectable flu vaccine for the 2004/2005 flu season was excusable as a matter of law. Furthermore, even if an inexcusable default occurred under the Contract, the Government is not entitled to excess reprocurement costs.

## ARGUMENT

"Default terminations are drastic actions that are imposed (or sustained) only for good grounds and on solid evidence." *Cantrill Development Corp.*, ASBCA Nos. 30,160, 30,693,

30,717, 89-2 BCA ¶ 21,635 (Feb. 3, 1989), *citation omitted.* The Government bears the burden of proving that termination for cause is justified. *Double B Enter., Inc.,* ASBCA Nos. 52010, 52192, 2001-1 BCA (CCH) ¶ 31,396 (April 24, 2001) (*citing Lisbon Contractors, Inc. v. U.S.*, 828 F.2d 759, 763-65 (Fed. Cir. 1987). The Board may set aside the DoD's decision to terminate GIV's contract for cause where it finds the DoD's decision was contrary to law, "arbitrary and capricious, or that it represents an abuse of...discretion." *Quality Env't Sys, Inc.*, ASBCA No. 22178, 87-3 BCA ¶ 20,060 at 101,569, *aff'd by Quality Env't Sys, Inc. v. U.S.*, 7 Cl. Ct. 428, 32 Cont. Cas. Fed. (CCH) ¶ 73267 (1985).

GIV does not dispute that it did not deliver Fluvirin® injectable flu vaccine to the DoD. However, that fact standing alone does not entitle the Government to summary judgment. Rather, in this case, the Board must set aside the DoD's decision to terminate for cause as arbitrary and capricious because the facts show that GIV did not default under terms of the Contract. Even if the Board were to find that there was a default under the Contract, the facts are clear that GIV's duty to perform was discharged under federal regulations that waive liability for an inability to deliver. Finally, the Board must set aside DoD's notice of intent to assess reprocurement costs as arbitrary and capricious because DoD has failed to demonstrate that it meets any of the criteria for assessing and collecting reprocurement costs.

## I. GIV DID NOT DEFAULT UNDER THE TERMS OF THE CONTRACT BECAUSE THE CONDITIONS PRECEDENT TO GIV'S PERFORMANCE WERE NOT MET

Contrary to its assertions in its Motion, the Government must do more than simply point to a non-delivery in order to carry its burden of providing solid evidence to justify the drastic

action of terminating GIV's Contract for cause and seeking excess reprocurement costs. Specifically, the Government must prove with solid evidence that GIV failed to make a delivery "by the *contractual completion date*" (emphasis added). *Cantrill*, 89-2 BCA ¶ 21,635. The Government has not proven this, and cannot prove this, and therefore, its Motion should be denied.

The intention of the parties to a contract is gleaned from all of the contract clauses interpreted as a whole, *i.e.*, from the four corners of the document. *Double B Enter., Inc.*, ASBCA Nos. 52010, 52192, 2001-1 BCA (CCH) ¶ 31,396 (April 24,2001) (*quoting The City of New York v. U.S.*, 113 F. Supp. 645, 647 (Ct. Cl. 1953)). If the terms of a contract document are unambiguous, then the Board's inquiry is at an end. *Serralles v. U.S.*, 46 Fed. Cl. 773, 782 (Fed. Cl. 2000). The terms of the Contract in this case are unambiguous. GIV is not the manufacturer of Fluvirin® (F#2). Fluvirin® is manufactured by Chiron Vaccines, a British company, located in Liverpool, England (F#2). While the Government Solicitation proposed a certain delivery schedule (F#3), the Contract Award Document, as well as the Delivery Order, include numerous clauses and provisions that not only modify the Solicitation's proposed schedule, but expressly condition GIV's obligation to deliver injectable flu vaccine on a number of conditions precedent:

- "May have to alter delivery schedule outlined in bid due to releases of vaccine" (R4, Tab 1, page 4 of 50);
- "Delivery: Dependent upon FDA release of vaccine, 50% of each awarded CLIN quantity shall be delivered during the month of September ...." (R4, Tab 4, page 2 of 7);
- "Delivery: Dependent upon FDA release of vaccine, 50% of each awarded CLIN quantity shall be delivered during the month of September ...." (R4, Tab 4, page 8 of 50);
- "Delivery: Dependent upon FDA release of vaccine, delivery will be as follows:" (R4, Tab 6, page 4);

- "Attached you will find Amendments #3 and #4 to the above referenced solicitation. Please note that GIV proposes the following delivery schedule contingent upon release of product from the manufacturer." (R4, Tab 7);
- "Delivery by: Dependent upon FDA release of vaccine, delivery will be as follows:" (R4, Tab 8, page 2 of 3);
- "CLIN 0001AA and 0003AA DELIVERY BY: Dependent upon FDA release of vaccine, delivery will be as follows:" (R4, Tab 9, page 5 of 5) (F#4).

The Government's Motion alleges that GIV's "repudiation and failure to *deliver in accordance with the contract schedule* " is the grounds on which its termination for cause should be upheld (emphasis added). Government's Motion at 7. However, the facts are clear that GIV had no obligation to deliver Fluvirin® by 30 September 2004, 31 October 2004 or 30 November 2004 *until and unless* Chiron and the FDA released the vaccine for import to and sale in the United States. (F#4) The Government awarded the Contract having accepted GIV's reservations of performance subject to release and availability of the flu vaccine. (F#4) Nor can GIV's failure to deliver be characterized as a "repudiation" of the Contract as the Government suggests. Rather, GIV's October 12, 2004 letter was nothing more or less than notification to the Government that a condition precedent to GIV's performance --the release of Fluvirin® -- had not occurred. Equally incorrectly, the Government claims that "there is no dispute that Appellant failed to deliver in accordance with the delivery schedule." Government's Motion at 7. Based on the clear language of the Offer, the Contract Award and the Order, however, there was no scheduled date on which delivery was required because neither Chiron nor the FDA ever released the flu vaccine for import to the United States.

The Government's actions in this case amount essentially to an effort to "shoot the messenger." For a variety of reasons[2], rather than contract directly with Chiron to purchase one of the only two injectable flu vaccines licensed to be sold in the United States (Fluzone®, manufactured by Aventis, being the other one (F#8)), DoD chose to contract with the wholesale distributor of Fluvirin® for the only service the distributor could provide to the government related to the flu vaccine – delivery of Chiron's product to the government purchaser. The parties to the Contract Award negotiated all the material terms of the Contract, including each party's obligations to the other. The Government obligated itself to pay for Fluvirin® delivered by GIV, and GIV obligated itself to deliver Fluvirin® according to a proposed delivery schedule, expressly subject to modification dependent on release of Fluvirin® by both Chiron and the FDA. (F#1, #2, #3, #4)

As GIV was not the manufacturer of the contracted-for vaccine, and further had no control over the manufacturer or the manufacturing process (F#2), GIV specifically limited its obligations under the Contract to those circumstances over which it, as a distributor, could control – *i.e.*, the bundling and delivery of flu vaccine released for sale in the United States. (F#4) The Government assumed the risk that the contracted-for flu vaccine would not be available to be delivered by GIV. (F#4)

The Government alleges that "[i]n obligating itself to obtain the vaccine from a third party, Appellant assumed the risk of Chiron's failure to deliver." Government's Motion at 8.

---

[2] It should be noted that Chiron's parent is a US corporation that could have been required to enter into a Master Agreement under 38 U.S.C. § 8126(a) obligating it to sell directly to the DoD, but the Government never chose to pursue such an option.

This bald statement, however, is completely contrary to the facts of this case and the express terms of the Contract. The Offer, Contract Award and Order all clearly document that should Fluvirin® from Chiron Vaccines in Liverpool, England not be "available," or if either Chiron or the FDA did not "release" Fluvirin® from Chiron Vaccines in Liverpool, England for sale in the United States, then GIV had no obligation to deliver flu vaccine on any schedule whatsoever to the DoD. (F#4) The cases cited by the Government in its Motion at pages 8-9 are inapposite to this appeal because under the unambiguous terms of the Contract, the risk that Chiron would not or could not release flu vaccine for delivery by GIV was borne squarely by the Government.

The Government has not met its burden of proving that GIV failed to meet a contractual completion date, and therefore, its Motion must be denied.

GIV, however, has demonstrated by undisputed facts, that it did not breach any contract terms regarding delivery dates, and thus respectfully requests that its Motion for Summary Judgment be granted.

## II. GIV'S DUTY TO DELIVER FLUVIRIN® WAS EXCUSED BY OPERATION OF LAW

As discussed in Section I above, GIV had no contractual obligation to deliver Fluvirin® under the Contract until and unless the vaccine was released for importation to the United States by Chiron and the FDA. However, even if the Board determines that GIV had defaulted in an obligation to deliver flu vaccine under the Contract, GIV's non-delivery was excusable under FAR 52.212-4(f).

The Contract incorporated the default provisions of FAR 52.212-4. (F#15) The FAR provides for a waiver of liability for a contractor when a default occurs under certain circumstances:

> "*Excusable delays*. The Contractor shall be liable for default unless nonperformance is caused by an occurrence beyond the reasonable control of the Contractor and without its fault or negligence such as, acts of God or the public enemy, acts of the Government in either its sovereign or contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, unusually severe weather, and delays of common carriers."

FAR 52.212-4(f).

In this case, GIV has properly pled facts that show that its inability to deliver the contracted-for Fluvirin® was caused by occurrences beyond its reasonable control and without its fault or negligence. The Government has failed to prove that GIV's non-delivery was not legally excusable, and therefore, its Motion for Summary Judgment must be denied, and GIV's Motion should be granted.

A. The Government Cannot Prove That GIV's The Failure to Deliver Flu Vaccine Was Not Excusable

Even if GIV were deemed to be in default under the Contract because of the non-delivery of Fluvirin®, as a matter of law, GIV is not liable for that default if its nonperformance is caused by an occurrence beyond its reasonable control, and without its fault or negligence. FAR 52.212-4(f) (incorporated by reference into Contract via Solicitation No. SP0200-04R-0005 of 2/13/04, at 9 of 50); 4J Tech., Inc., ASBCA No. 42194, 92-3 BCA ¶ 25,209.[3] (F#15).[4]

[3] A date was not provided for this ASBCA case.

[4] Moreover, a contractor's inability to deliver is excusable so long as the reason for the non-delivery is not due to fault of negligence of a subcontractor or supplier. *Id.*

The Government does not claim that GIV had any fault or was negligent under the contract. Rather, the Government alleges, without support of any kind, that "Chiron's negligence caused the bacterial contamination" that ultimately prevented the release of Fluvirin® to the U.S. market. Government's Motion at 9. However, the record is completely devoid of anything that proves that Chiron was negligent or committed any "misdeeds" that "caused" contamination of any lots of flu vaccine. The burden is on the Government to prove that Chiron's negligence or fault caused the contamination, and further that the contamination of the few lots of vaccine was the cause of the FDA's action to embargo all flu vaccine produced by Chiron and prevent its release to the U.S. market. The Government's Motion fails to meet this burden, and therefore, it must be denied.

Moreover, there is absolutely no basis for the Government to represent to this Board that the FDA's refusal to release Chiron's Fluvirin® supply constituted a permissible exercise of the DoD's contractual right to "reject[] nonconforming end items." Government's Motion at 10-11. By the express terms and provisions of the Contract, any government inspection and/or acceptance of "end items" was to occur at the product "destination" (R4, Tab 1, pages 8, 13). Importantly, even if the Government had exercised its reserved "right to require inspection and acceptance at contractor's plant," the Contract is clear that – consistent with a pure delivery Contract – the "plant" where inspection and acceptance was to take place was GIV's facility in Bastian, Virginia, where any Fluvirin® which had been released by Chiron and FDA was to have been "packed and prepared for shipment." (R4, Tab 1, pages 13, 16). Certainly, the Government is not arguing to this Board that the FDA's inspection of the Chiron plant in October 2004

represented DSCP's exercise of its inspection rights under the Contract at issue in this appeal. Other than the October 2004 inspection of the Chiron manufacturing plant, there is nothing in the record to support the Government's claim that its termination action should be justified on the basis of any inspection of items offered by GIV.

Finally, the Government's argument that GIV "never offered a product for release that complied with the contract requirements[, and thus] the Government's rejection of nonconforming end items does not constitute excusable delay under the terms of the contract" (Government's Motion at 10-11) proves nothing more than it has failed to read its own Contract. GIV was not obligated to "release" flu vaccine under the Contract – only Chiron, the manufacturer of the vaccine, or the FDA were authorized to release the vaccine. (F#4).

B. As A Result Of Acts Of the U.S. Government, It Was Impossible For GIV To Obtain A Conforming Alternative Injectable Flu Vaccine To Satisfy The Contract Terms

Not just one, but two, agencies of the U.S. government took actions in their sovereign capacity that made it impossible for GIV to perform under the Contract. First, the FDA refused to release Fluvirin® for sale in the United States and embargoed the product. (F#7) Then, the CDC took control over the distribution of any injectable flu vaccine that was available in the United States and prohibited its distribution to persons who were not included on the CDC's priority list (F#8)

The Government misses the point of the default regulations when it argues that "Flu-Mist was available to Appellant and was an acceptable alternative." Government's Motion at 11. In January 2004, DoD had the choice of soliciting bids for a "live" flu vaccine delivered via nasal

spray that is approved for use only in healthy individuals between the ages of 5 and 49 years (FluMist®), or an inactivated, purified surface antigen injectable flu vaccine that is approved for use in all persons over the age of 6 months, regardless of health (Fluvirin®). (Complaint ¶¶84-86). DoD chose to solicit bids for a "purified surface antigen vaccine for intramuscular administration, for immunizing persons 6 months of age or older OR 4 years of age or older." (R4, Tab 1, page 23). As the Government correctly points out in its Motion, GIV "was required to comply with the ....Salient Characteristics ...[and] offer[] a product for release that complied with the contract requirements." Government's Motion at 10. While the Government might have been willing to accept a product with radically different Salient Characteristics as an alternative to what it did order, there is no law that requires GIV to deliver a product it did not agree in advance to provide.

The Government has failed to prove that GIV is not entitled as a matter of law to a waiver of liability for non-delivery under FAR 52.212-4(f). Therefore, the Government's Motion for Summary Judgment should be denied. GIV's Motion should be granted, however, because the evidence is clear that the unavailability of Fluvirin® was due to actions of the U.S. government acting in its sovereign capacity. *See 2004 Chiron Flu Vaccine Chronology*, Press Release (Oct. 16, 2004), *available at* www.fda.gov/oc/opacom/hottopics/chronology1016.html. The FDA publicly attributed its determination to embargo Chiron's flu vaccine to concerns over Chiron's quality control procedures, rather than proof of any contamination in any vaccine lot proposed for sale in the U.S. *Id.*

## III. GIV IS NOT LIABLE FOR EXCESS REPROCUREMENT COSTS

As a threshold matter, the Government seeks to avoid review of its notice to GIV of its intent to assess excess reprocurement costs in the amount of $2,300,000, claiming GIV's challenge to a known dollar demand by the Government is "premature" because the Government has not made a demand in writing. This argument is specious.

This case does not present a situation where the Government cannot yet quantify the amount of its alleged damages, or a situation where the Government is still in the process of rebidding a contract. DoD "reprocured" FluMist® in October 2004, quantified the "delta" between the cost of Fluvirin® under the Contract and the cost of FluMist® it purchased prior to its termination of GIV's Contract, and notified GIV of its claim for reprocurement costs in February 2004. The Board has jurisdiction, and GIV is entitled to review of the Government's claim against it in a timely manner.

GIV has presented sufficient evidence in its Complaint to prove that it is not liable to the Government for any costs related to the termination of the Contract. In order to recover excess reprocurement costs, the DoD must establish that: (1) the reprocured supplies are the same as, or similar to those involved in the terminated contract; (2) the DoD actually incurred excess costs; and (3) the Government acted reasonably to minimize the excess costs. Cascade Pacific Int'l v. U.S., 773 F.2d 287, 294 (Fed. Cir. 1985); see also WEDJ, Inc., ASBCA No. 27067, 86-3 BCA

(CCH) ¶ 19,169 at 96,906.[5] GIV should not be assessed reprocurement costs because DoD did not satisfy the aforementioned conditions.

It is undisputed that the Government contracted for Fluvirin® injectable flu vaccine. (F#1). "While the Government does not have to prove that the reprocured items and the original items are identical in order to satisfy the requirement for similarity, it must show that the items have similar physical and mechanical characteristics and that they serve the same functional purpose. If the Government fails to prove that the items are similar, it loses its right to excess costs." See Advance Bldg. Maint. Co., ASBCA Nos. 27183, 28219, 85-2 BCA ¶ 18,076 at 90,750; see also Barrett Ref. Corp., ASBCA Nos. 36590, 37093, 91-1 BCA ¶ 23,566 at 118,145, *aff'd.*, 937 F.2d 623 (Fed. Cir. 1991) (table). Here, as GIV set out in Section III.C above, FluMist® live vaccine nasal spray does not have sufficiently similar physical and mechanical characteristics to Fluvirin® to satisfy the most important prong of the reprocurement cost test. Fluzone® injectable flu vaccine manufactured by Aventis might have satisfied the contract terms once the Chiron vaccine became unavailable as a result of the FDA's decision not to release it, but the CDC's actions to take control over the distribution of Fluzone® rendered it impossible for GIV to offer Fluzone® to the DoD. Ironically, even if GIV had delivered Fluvirin® to the DoD under the terms of the Contract or Fluzone® as an alternative to the Chiron vaccine, the DoD was not permitted to distribute injectable flu vaccine to members of the military. The DoD gave away 200,000 doses of the lower cost injectable flu vaccine it had on hand, and purchased

[5] A date was not provided for this ASBCA case.

higher cost flu vaccine nasal spray to use instead. Thus, the Government fails the third prong of the reprocurement cost test in that it failed to act reasonably to minimize its alleged excess costs.

## IV. SUMMARY

In February 2004, when the DoD issued its Solicitation seeking bids for injectable flu vaccine for members of the military, there were only two injectable flu vaccines licensed for sale and use in the United States. There were only two companies willing to manufacture flu vaccine for the U.S. market in 2004 because the ordinary risks inherent in this process generally far outweigh the financial feasibility of the undertaking. Production of a flu vaccine takes time – the vaccine medium needs to be inoculated and incubated for months. Flu vaccine cannot be produced "on demand." And despite adherence to the best manufacturing processes, contamination is a hazard of the trade.

DoD undoubtedly was also aware that flu vaccine production is a risky business as reflected in the Contract, which states that DoD would not purchase all its flu vaccine from a single source, even if that source offered the lowest price for the vaccine. GIV is in the business of distributing vaccines, so it knows the risks inherent in manufacturing these products. GIV does not, however, manufacture flu vaccine. Both parties to the Contract negotiated terms based on knowledge about the fragility of flu vaccine production. The Contract includes terms that make it clear that DoD assumed the risk that Chiron's flu vaccine would not be released for sale in the U.S. The Contract is clear that GIV had no obligation to the Government if Fluvirin® was not released by Chiron and the FDA for sale in the U.S. GIV would never have submitted an offer to deliver a product that is inherently risky to produce, that GIV does not produce,

produced by a company over which GIV has absolutely no control, in a country across the ocean from GIV's facilities, in an environment where there is only one other source of the same product potentially available, *and* where the DoD has tied up the only other source of that product with an identical contract – unless the Contract made clear that GIV had no obligation to the Government in the event that the product it had agreed to deliver was not available.

At the time the DoD issued the Solicitation in February 2004, it apparently made the determination that the live vaccine nasal spray was not an acceptable vehicle for inoculating the military from flu. GIV has no idea whether that decision was based on the substantial difference in cost between the injectable flu vaccine and the nasal spray, the more onerous storage and transportation requirements for the nasal spray, the decreased target population that may safely be vaccinated with the nasal spray, the increased health risk attendant to the use of the live vaccine in the nasal spray, or some combination of all these reasons. GIV understands and appreciates that the DoD was willing to use the nasal spray in October 2004, when the FDA, CDC and HHS all took actions to prevent the military from having access to injectable flu vaccine. But, under the terms of this Contract, and by operation of law, GIV's obligation to deliver Fluvirin® was never triggered because the conditions precedent to that obligation never occurred (the vaccine was never released by Chiron or the FDA), and further, actions of the U.S. government in its sovereign capacity prevented GIV from delivering injectable flu vaccine as an alternative to Fluvirin®. For these reasons, GIV was not in default of the Contract, or alternatively the default was legally excusable. Finally, in no event is GIV liable to the Government for excess reprocurement costs.

The Government's Motion for Summary Judgment must be denied. GIV respectfully requests the following relief:

1. a reversal of the Final Decision of the DoD terminating the Contract for Cause;

2. a conversion of the Termination For Cause to a Termination for the Convenience of the Government;

3. a denial of the DoD's claim for excess procurement costs; and

4. an Order awarding GIV its costs of suit, and such other and further relief as the Board finds is just and proper, including such relief as may be afforded by the Equal Access to Justice Act 5 U.S.C. § 504, as amended.

Sincerely,

Joseph E Casson [signature]

Joseph E. Casson

cc: Kathleen D. Hallam
Chief Trial Attorney
Defense Supply Center Philadelphia
700 Robbins Avenue, Bldg. 36/1
Philadelphia, PA 91111-5092

RECEIVED
2005 AUG 12 P 2:21
ARMED SERVICES
BOARD OF
CONTRACT APPEALS